UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                  CASE NO. 8:20-cr-242-T-35CPT

YASON ARBEI MORENO GOMEZ

## UNITED STATES' SENTENCING MEMORANDUM

Pursuant to this Court's Acceptance of Plea of Guilty and Adjudication of Guilt, the United States files this sentencing memorandum requesting a guideline sentence for Mr. Yason Arbei Moreno Gomez in accordance with his plea agreement provisions.

## Factual Background

The defendant conspired to distribute approximately 83 kilograms of cocaine and 909 kilograms of marijuana. According to the plea agreement, the following facts are not in dispute, Doc. 33:

On or about August 8, 2020, the U.S. Coast Guard ("USCG") intercepted a go-fast vessel (GFV) in international waters approximately 60 nautical miles southwest of Punto Banco, Costa Rica. The Coast Guard Cutter HAMILTON launched a small boat to investigate the GFV, gained positive control, and conducted a right-of-visit boarding. Defendant Elvin Josue Rojas Siles identified himself as the master of the vessel and made a claim of Costa Rican nationality for the vessel. The USCG contacted the Costa Rican government to confirm the vessel's registry. The

Costa Rican government responded that it could not confirm the claimed nationality and registry of the vessel. Therefore, and in accordance with 46 U.S.C. § 70502(c)(1)(A) and (d)(1)(C), the GFV is a vessel without nationality and therefore subject to the jurisdiction of the United States.

In addition to the master, Mr. Rojas Siles, defendants Yakli Javier Orozco Perez and Yason Arbei Moreno Gomez were also found on the GFV. The Coast Guard seized numerous bales and packages containing eighty-three (83) kilograms of cocaine and nine hundred and nine (909) kilograms of marijuana which were in plain view on the deck of the GFV.

Mr. Moreno Gomez willingly agreed to transport bales containing at least eighty-three (83) kilograms of cocaine and at least nine hundred and nine (909) kilograms of marijuana aboard the GFV with his codefendants and others. The purpose of this agreement was to smuggle this cocaine and marijuana through international waters and distribute the cocaine and marijuana to other persons. The defendant knew that the bales onboard the GFV contained five (5) or more kilograms of cocaine and one hundred (100) or more kilograms of marijuana and knew that the planned voyage was a drug smuggling venture.

*Id.* at p. 20-21.

## Procedural Background

On August 20, 2020, a grand jury returned a two-count indictment against defendants Mr. Rojas Siles, Mr. Orozco Perez, and Mr. Moreno Gomez. Doc. 1. Count One (to which Mr. Moreno Gomez has pleaded guilty) charged the

defendants with conspiring to distribute, and possession with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine and one hundred kilograms or more of a mixture and substance containing a detectable amount of marijuana. *Id.* That indictment also charged the defendants with possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine and one hundred kilograms or more of a mixture and substance containing a detectable amount of marijuana. *Id.*

The defendants had their initial appearances in the Middle District of Florida on August 28, 2020. Doc. 20. After a detention hearing, where each defendant reserved on the issue of bond, the Court ordered the Defendants detained pending trial. Doc. 21. The Court also issued a Pretrial Discovery Order and Notice of Trial and Status Report. Doc. 23.

On November 19, 2020, Mr. Moreno Gomez pleaded guilty to Count One of the Indictment pursuant to a written plea agreement before the Honorable Magistrate Judge Christopher P. Tuite. Doc. 33, 49. The Court adjudicated Mr. Moreno Gomez guilty on December 10, 2020 and scheduled his sentencing for March 4, 2021. Doc. 55.

## Presentence Investigation Reports

The final version of the presentence report (PSR) for Mr. Moreno Gomez was filed on February 18, 2021. Doc. 84. The final presentence report calculated a base offense level of 34 based on the converted drug weight of the cocaine and marijuana, as well as a three-level acceptance of responsibility adjustment under USSG

3

§3E1.1(a) and (b), resulting in a total offense level of 31. *Id.* at ¶¶ 21, 28-30. Mr. Moreno Gomez's criminal history was established to be Category I. *Id.* at ¶ 36. As a result, Mr. Moreno Gomez's guideline imprisonment range was determined to be 108-135 months. *Id.* at ¶70. However, with the ten-year mandatory minimum in place, the guideline imprisonment range becomes 120 to 135 months. *Id.*

It is notable that Mr. Moreno Gomez does not meet the criteria for specific offense characteristics under USSG §5C1.2 and 18 U.S.C § 3553(f)(1)-(5) only because he has failed to complete a full debrief interview at this time. *See Id.* at ¶ 22. If Mr. Moreno Gomez truthfully provides to the Government all information he has concerning his offense not later than the time of his sentencing hearing, the Government's position is that he would be eligible for both a two-level decrease in his offense level as well as sentencing below the mandatory minimum under USSG §§5C1.2 and 2D1.1(c)(18) and 18 U.S.C § 3553(f)(1)-(5). In that case, his total offense level would be 29. The guideline range for incarceration would then be 87-108 months. This issue is further discussed on page 5 of this memorandum.

The PSR notes that the Court must impose at term of supervised release of at least five years under 21 U.S.C. 960(b)(1)(B)[1], the fine range is $30,000 to $10,000,000, and a $100 special assessment is mandatory. *Id.* at ¶ 73, 77, 79. The probation office did not identify any reasons that would warrant a departure or a sentence outside the advisory guideline system. *Id.* at ¶¶ 83-84.

---

[1] If Mr. Moreno Gomez satisfies safety valve requirements, the range would be 2-5 years.

Mr. Moreno Gomez filed no objections to the PSR.

### **Failure to Debrief**

Although the United States expects that Mr. Moreno Gomez will provide a complete and truthful debrief before the time of sentencing, the following is provided out of an abundance of caution.

The defendant has, at the time of this filing, failed to meet the criterial set forth in USSG §5C1.2(a)(5) and 18 U.S.C. § 3533(f)(5). That is, he has not <u>completely</u> and truthfully provided <u>all</u> information he has concerning the subject offenses. *See United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997) ("The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others.")

Mr. Moreno Gomez attempted on February 5, 2021 to provide a debrief interview telephonically. Although he gave some background information explaining how he came to be involved in the conspiracy, the phone line cut off after only a few minutes and before he was able to disclose information about the smuggling trip itself. Mr. Moreno Gomez did not give a post-arrest statement or any other statements to law enforcement in this case. Despite promptings by the government, Mr. Moreno Gomez has not yet met his burden to come forward to complete his debrief.

Therefore, unless and until the required debrief is completed, the United States opposes a two-level downward adjustment and application of safety valve for the purpose of disregarding the statutory mandatory minimum penalty.

**Potential objection: Minor Role**

Although defense counsel has not submitted a timely objection, the following is submitted in an abundance of caution opposing minor role reduction for Mr. Moreno Gomez.

### A. Legal Framework

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. USSG §3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "***substantially less culpable than the average participant*** in the criminal activity." *Id.* §3B1.2 cmt. n.3(A) (emphasis added). The proponent of the downward adjustment bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. DeVaron,* 175 F.3d 930, 934 (11th Cir. 1999).

Determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* §3B1.2 cmt. n.3(C) It requires consideration of various factors, including:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;
(ii) the degree to which the defendant participated in planning or organizing the criminal activity;
(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also compare the defendant's conduct, in the criminal scheme attributed to him, to that of other participants. *Id.* at 934, 944.

Regarding the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct ***attributed to her***." *De Varon*, 175 F.3d at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment

simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *De Varon*, 175 F.3d at 944. Instead, "the district court must determine that the defendant was less culpable than ***most other participants*** in her relevant conduct." *Id.* (emphasis in original).

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

The Eleventh Circuit has applied the *De Varon* analysis to maritime interdiction conspiracy cases like the instant case and has upheld the district court's decision to deny a mitigating role reduction for a crewmember. For instance, in *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), the defendant—like Mr. Moreno Gomez—pleaded guilty to drug trafficking in international waters in violation of 46 U.S.C. § 70503(a). The *Palma-Meza* court sentenced that defendant based on the quantity of cocaine involved (480 kilograms), the vessel's small crew

size, and the defendant's background and work experience, and noted that the quantity of drugs "was not insignificant" and that his role on the vessel "was not meaningfully distinct from the other two crewmembers." *Id.* at 807-08; 810.

In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016), the defendant faced the same two charges on which the grand jury indicted Mr. Moreno Gomez. The *Herrera-Villarreal* court sentenced that defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other vessel's crewmembers. *Id.*

**B. Mr. Moreno Gomez cannot show he is substantially less culpable than the average participant in the criminal activity.**

1. <u>Mr. Moreno Gomez fails to satisfy the first prong of *DeVaron* analysis because he cannot show he is substantially less culpable within the conduct for which he was held accountable.</u>

*De Varon*'s first prong requires the Court to evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. The object of the conspiracy to which Mr. Moreno Gomez pleaded guilty was to transport 83 kilograms of cocaine and 909 kilograms of marijuana across international waters in a

9

specialized drug smuggling vessel. Several of the *DeVaron* and USSG. §3B1.2 cmt. n. 3(C) factors weigh against finding that Mr. Moreno Gomez played a minor role in this conspiracy.

The total value of the drugs Mr. Moreno Gomez and his co-defendants conspired to transport was over $13.6 million dollars.[2] *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role) *See also United States v. Cruichshank,* 837 F. 3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs that a courier possesses is a significant consideration in minor role analysis, but explaining that it may not be used as the *only* factor the court considers).

Because Mr. Moreno Gomez's actual conduct was coextensive (if not far greater than) his relevant conduct, he cannot have had a minor role compared to his relevant conduct. Although Mr. Moreno Gomez's conspiracy may be part of a larger criminal enterprise, he is not being held accountable for the actions of any larger

---

[2] According to the 2019 National Drug Threat Assessment[2], the national average retail price of cocaine was last recorded at approximately $153 per gram[2], or $153,000 per kilogram, while the average black-market price for high quality marijuana was $800-1000 per pound[2]. Conservatively, the wholesale value of that amount of cocaine would be over $12 million, and the wholesale value of the marijuana is nearly $1.6 million, despite the likely lower quality of the marijuana. 2019 National Drug Threat Assessment, DEA-DCT-DIR-007-20, December 2019, available at https://www.dea.gov/sites/default/files/2020-02/DIR-007-20%202019%20National%20Drug%20Threat%20Assessment%20-%20low%20res210.pdf, at p. 61, 82 (listing price of $800-1000 per pound of high-quality marijuana), 88 (marijuana from the Carribean is typically lesser in quality than that produced in North America).

enterprise. He is solely being held accountable for his actions aboard the go-fast vessel, with respect to the cocaine and marijuana transported on that vessel. *De Varon*, 175 F.3d at 941, 947 (court should evaluate defendant's role based on the conspiracy for which he is held accountable; rejecting notion that the defendant's role should be based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor").

Lastly, Mr. Moreno Gomez's offense level is calculated using only the amount of drugs on the vessel. Doc. 60 at ¶¶ 19-28. Thus, his "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 2016 WL 6123493 at *2. Because Mr. Moreno Gomez did not have a minor role compared to his relevant conduct, he cannot carry his burden on the first prong of the *De Varon* analysis. *See, e.g., Alvarado-Forbes*, 247 F. App'x at 205 (denying minimal participant or minor role where defendant claimed his sole purpose on a vessel with kilograms of cocaine was "to be a live body" and "make the vessel look like a fishing vessel"; defendant's stated purpose "would not make him a minor participant because concealing the illegal nature of the vessel's cargo would be vital to the success of the smuggling scheme").

2. <u>Mr. Moreno Gomez fails to satisfy the second prong of the *DeVaron* analysis.</u>

Even if Mr. Moreno Gomez could satisfy the first prong of the DeVaron analysis, he fails to satisfy *De Varon*'s second prong, which requires the Court to

compare the defendant's role in the conspiracy to that of other participants in the criminal scheme attributable to him. *De Varon*, 175 F.3d at 934, 944. As previously noted, the conspiracy for which Mr. Moreno Gomez is being held accountable is limited to the 83 kilograms of cocaine and 909 kilograms of marijuana recovered from the GFV. The law is clear that the Court "cannot use a [defendant's] status [as a minor participant in the overall drug smuggling conspiracy] to justify a minor-role reduction in his sentence for the smaller conspiracy in which he personally participated." *United States v. Bonilla-Ortiz*, 362 F. App'x 63, 65 (11th Cir. 2010); *United States v. Pico-Mocera*, 740 F. App'x 969, 972-73 (11th Cir. 2018) (upholding denial of minor role where defendant failed to prove he had a lesser role than either of the other crewmembers); *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017) (upholding denial of minor role even though defendant was a mariner with less responsibility than captain and load guard); *United States v. Ramirez-Garcia*, 195 F. App'x 888, 890 (11th Cir. 2006) (rejecting mitigating role reduction where defendant was one of six mariners on a drug smuggling vessel that carried kilograms of cocaine).

The crux of the analysis is whether Mr. Moreno Gomez is "substantially less culpable than the average participant" in the conspiracy. USSG §3B1.2 cmt. n.3(A). Stated differently, the issue is whether he is "less culpable than ***most other participants***" in the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); USSG §3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which Mr. Moreno Gomez is being held accountable was a mariner in the boat transporting the

drugs. Because Mr. Moreno Gomez was himself a mariner, he is not "substantially less culpable than the average participant." Because Mr. Moreno Gomez failed to show that he is substantially less culpable than the average participant in the relevant conduct, he should be denied a minor role adjustment.

<u>**Sentencing Factors**</u>

In *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the USSG is not mandatory. *Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Accordingly, sentencing judges should apply the USSG in determining a reasonable sentence, but can also exercise discretion in deviating from the USSG, if doing so would result in a reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant;
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a USSG sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

To arrive at an appropriate sentence, the district court must consider all the applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).
serious offense.

Operating with the understanding that there is no adverse information, the United States will not oppose any request by Mr. Moreno Gomez for a low-end guideline sentence. The United States believes that such a sentence is appropriate considering the nature and circumstances of the offense, the history and

characteristics of the defendant, and other factors set forth under 18 U.S.C. § 3553(a).

Any further departure or variance below the guidelines is, however, unwarranted and would result in a sentence insufficient to meet the statutory purposes of sentencing. Mr. Moreno Gomez chose to participate in a conspiracy to transport millions of dollars of drugs aboard a three-person go-fast vessel. Despite any personal circumstances or financial hardship that may have driven Mr. Moreno Gomez to take part in an international drug smuggling conspiracy, this case involves a serious drug trafficking offense and must be treated as such. *See U.S. v. Moreno*, 134 F. Appx. 339, 342 (11th Cir. 2005) (noting that U.S.S.G. 5K2.20(c)(3) foreclosed an aberrant behavior downward departure for serious drug trafficking offenses such as the maritime smuggling case—like this one—considered in Moreno).

Section 3553 makes clear that the Court is to impose a sentence that will help promote a respect for the law, provide deterrence to the commission of any future offenses, and protect the public. *See* 18 U.S.C. § 3553. Had Mr. Moreno Gomez and his co-conspirators successfully completed their mission, immense harm to others could have arisen from the distribution and use of such a significant quantity of cocaine and marijuana. Thus, a Guidelines sentence will serve Section 3553's various interests.

# CONCLUSION

For the reasons set out in this memorandum, the Court should deny any motion for a mitigating role reduction.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: */s/ Tereza Zambrano Ohley*
Tereza Zambrano Ohley
Special Assistant United States Attorney
Florida Bar No. 0060407
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Tereza.Ohley@usdoj.gov

U.S. v. Moreno Gomez					Case No. 8:20-cr-242-T-35CPT

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Counsel of Record

                                                */s/ Tereza Zambrano Ohley*
                                                Tereza Zambrano Ohley
                                                Special Assistant United States Attorney
                                                Florida Bar No. 0060407
                                                400 N. Tampa Street, Suite 3200
                                                Tampa, Florida 33602-4798
                                                Telephone:   (813) 274-6000
                                                Facsimile:    (813) 274-6358
                                                E-mail: Tereza.Ohley@usdoj.gov